Good morning, counsel. Good morning. May it please the Court, I'm Thomas Hester for Appellant Samuel Negash. This is a case, as you know, that's a Confrontation Clause case. And while I don't intend to speak much about the law except in responding to questions, I thought it apt to begin with something from Justice Scalia in Crawford, as confrontation is really kind of a legacy of his in the criminal law. And that is his statement for the Court in Crawford. We do not think the framers meant to leave the Sixth Amendment's protection to the vagaries of rules of evidence, much less to amorphous notions of reliability. It commands not that evidence be reliable, but that evidence – but that that reliability be assessed in a particular manner by testing in the crucible of cross-examination. And the central issue in this case is the quality of the interpretation at trial. Let me then go right to the – what to me is the difficult issue here. You, of course, are proceeding on a collateral attack. And under AEDPA, you need to show that there was clearly established Federal law that allows you to be successful in the appeal that you are making. What is the case or cases that you cite that you believe represent clearly established Federal laws established by the United States Supreme Court on this issue? Yes. And really, I think Crawford does that. Crawford? Yes. That's a very global issue. But the facts are totally different, are they not? It is not factually controlling, no. But the critical intent of testing the reliability of evidence through the crucible of cross-examination is what is denied Mr. Nagash by an interpreter who fails in really both roles of an interpreter in a trial. So Crawford is your authority, right? Yes. I mean, I think that – Anything else? Well, I would say – I think Rock, Van Arsdale, I mean – but they are not interpreter cases, if that's what you're asking me for. That's what I'm asking. There you need to go to Lynn and the other cases from the circuit. And I know I need Supreme Court precedent. Right. So I begin and rest on Crawford's statement, and let me try to explain why that is offended here. Okay? So Samuel Nagash is an immigrant from Eritrea. His cousin comes here, and subsequently her daughters, whom he sponsors to come to this country. At trial, the daughters testify through – in English. It's only the mother, Ms. Hagos, who testifies through an interpreter. That interpretation is very clearly, I would say from the record, deeply flawed. I think the interpreter fails in – Let me ask you this, counsel. If I recall the record correctly, when asked to specify in what way the translation was incorrect, your client indicated that there was one potential ambiguity. Instead of using the word discipline, it should have been control. What else? So I will shift to speaking to that, which is kind of under the prejudice piece. First of all, the record as it develops in the State court is significant, and I regret that the briefing wasn't as explicit on these two points. That response about the difference between discipline and control I will speak to in detail, but I would first note that it arises when the trial judge directs him to give one example, and that is the example he gives. Okay. That's his best example, presumably, right? Presumably. And it's salient, and I'll get to that. It is also the case that the colloquy that first – there's immediate colloquy from really the judge and the prosecutor trying to get the interpreter to do a better job. But in short order, the defense attorney speaks up and asks for questions in aid of objection around a question about control or where control comes into Ms. Hagos' testimony. On the heels of that, five pages later in the transcript, she moves to strike, and they she asks for Mr. Nagash to testify that day. The judge instructs, you know, I want to get through more things. He'll testify later about that. And it ends up being 300 pages later. But when the interpreter testifies that day, the record is inaudible as to the languages that are being spoken, although it's clear, and it's clear from defense counsel's initial objection in the face of control, that there are different languages involved. And when Mr. Nagash testifies to the judge later, he explains that both he and Ms. Hagos, his cousin, whose native language is Tritigrigna or Tigri, and that the interpreter is actually speaking Amharic, and that both he and his cousin speaks some Amharic, and she's responding to him in Amharic. That is 719 to 721 of the excerpt of record is where you'll find all of that discussion. Counsel, that's an interesting argument. I don't pretend to be an expert in Spanish, but I speak it pretty well, certainly not like my colleague. But nobody can translate exactly. There's always a difference. So the question is what's the issue, how much is a problem? And in this case, as I see it, the testimony of the mother is really not all that important in this case. She's a collateral figure. She's not the primary witness. It's the victim. Under the prejudice prong, what do we do with this? You have to show that there was a substantial injurious effect, do you not? And I'm trying to figure out through my review and based on what you've said here how the difference between discipline and control from the mother's testimony makes that kind of a difference. Let me try to elucidate that, because if you look, and I would urge you to go to the prosecutor's opening statement and read that, it's clear that he has some expectations about what's going to come in through Ms. Hagos' testimony, and I think it's fair that both parties have that through a police report where her daughter translated. And that comes out in the testimony. But the prosecutor's opening talks about how, and he refers to Mr. Nagash as a father figure in this family, the head of the household, and how he is exercising discipline over the girls, you know, about where is she going, how is she doing in school. He interfaces with the school. He then goes on to speak of him grooming her. With all due respect, he did a whole lot more than groom her by her repeated testimony. He grossly abused her according to her testimony. And so if the mother's never even heard from, putting aside the first prong in this case, again, I struggle with how a minor discrepancy in the language translation has pretty much to do with showing prejudice here. If the mother hadn't even appeared, you've got a jury going to believe what the jury is going to believe, and the jury believed the girl, right? So it is a he said, she said case. Oh, yeah. The mother, and I'll speak to why the mother matters in just a second. Okay. It's a case in which in the grand jury there were 62 counts charged. Thirty of those end up being dismissed, whatever comes out that wasn't, you know, borne out as they prepared for trial by the girls' accusations. Another seven are MJOA. So 25 counts go to the jury, which convicts on 24, nonunanimous as to each conviction. Oregon allows nonunanimous verdicts. That's our system. That is. But I think that speaks to it not being such an open and shut case. It isn't something that it's open and shut. It's the fact that based on the girl, the victim's testimony alone, the mother's not even considered. The jury could easily have convicted this man. And it seems like your whole case is resting on the translation error, if it was, for which you have no direct Supreme Court case, and you haven't shown prejudice. Where's the prejudice here? The state calls the mother as a witness. The evidence that the defense would have developed, and you can see this anticipated by the prosecution in its opening, is that the girl resented Mr. Nagash because he was both very involved in her education, the interface with the school. He was this father figure. He was questioning her about her social interactions, what she was doing with boys, what she was doing and other things. He was, the defense theory is, exerting that role of a father and a disciplinarian, not controlling and grooming as the prosecutor is able to make it out. But the testimony was that he raped her repeatedly, right? That is the girl's testimony, yes. That's pretty important, isn't it? It's critical testimony, absolutely. And if it were credited without any other witnesses, that would be enough to convict him. But part of his ability to confront her was to confront the government's case. Her mother, who brought her to this country when he sponsored them and who would have presumably testified, if she had had an adequate interpretation, that he was this father figure. She's also, if you look at the mother's testimony, it is ultimately, I think, fairly clear that she is kind of using the interpretation to evade when there's discussions about the trip to Seattle. Let me ask my colleagues. You're over time. Either of my colleagues have questions of this gentleman? Okay. Counsel, thank you very much. Could I ask you one quick question? Under Oregon practice, when there's a non-unanimous verdict, is it a public record or does the jury simply say guilty, not guilty? No, Your Honor. It is in the record. I can point you to those pages if you want. It's an 11 to 1 verdict on each of the counts of conviction. Yes. And I would just then add my final statement that in this case, on the interpreter issue, things get turned on their side and it's made incumbent upon Mr. Nagash, who doesn't speak English as his first language, to prove that things are wrong. The State's briefing repeatedly says all that confrontation requires is a fair opportunity to confront. He didn't have that opportunity. Thank you. Thank you, counsel. Thank you for your argument. Let's hear from the government. Good morning. Good morning. May it please the Court. Jordan Silk on behalf of the Superintendent Steve Franke. District Court correctly rejected Petitioner's confrontation claims in this case, first and foremost because no State court ruling was contrary to or involved any unreasonable application of clearly established Federal law. I respectfully disagree with that. I agree with my colleague that Crawford clearly establishes that the interpretation issues in this case were amounted to a violation of the Confrontation Clause, and there's no other cases that address this issue. And I think that really ends the matter on that point. To address the more specific issues that sort of go into the prejudice component of that, because additionally, even if, even assuming that the interpretation issues amounted to it. Well, what do we do with the Petitioner's argument that because we don't know what the victim's mother testified that we can't know whether Petitioner was able to fully cross-examine? So before you move on to prejudice, why wasn't this an inability to exercise the confrontation that he was entitled to do? Sure. A few responses to that. One, there's been no additional evidence presented even in this habeas proceeding to further develop the record about the nature of the interpretation difficulties. And I think given the context of the Petitioner bearing the burden here, that falls more at the Petitioner's feet than at the Superintendent's feet. Beyond that, though, there is actually — I mean, this case is somewhat unique in that Mr. Nagash was at trial, and actually the reason why this issue essentially arises is because he is able, or so he claims, to identify these problems with the interpretation, and he does have an opportunity to outline those problems for the court. And that's significant because in relation to another point, which is what I find one of the most significant things about the record in this case, is that when you read the transcript of the mother's testimony, certainly there's no dispute that the interpreter did not translate verbatim. It was not a certified translator. It was the best that was available, given the nature of the languages involved. Most of the answers are responsive to the questions. So that in and of itself, I think, is evidence that undercuts Petitioner's contention that this was seriously inaccurate translation. And actually, when you look at the Petitioner's testimony about the nature of the interpretation difficulties, it really — I think a fair reading of that testimony is that his major problem was that the witness was not providing a verbatim translation — or the interpreter. The interpreter was paraphrasing questions and answers, but without changing the essential meaning. So I think the record does show affirmatively that whatever — that the nature of the interpretation problems, to the extent there were any, were in the nature of not providing a verbatim translation without ultimately the essential substance, the essential meaning and accuracy of the translation being affected. And I think, you know, one of the issues that arose in the cross-examination of the mother was this issue about the mother testified that she got into work in the morning, and then in the afternoon it was she worked for eight hours in response to a question, how long did you work? And the interpreter initially just said eight hours. And the defense counsel developed this idea that, well, you left off the front part where she said she got in in the morning, and then in the afternoon it was eight hours. So this is — I mean, the defendant is making an issue about a potential problem in the translation of that — that insignificant of a point. I think that it would certainly be the case that if there was something like — she was asked, you know, did your daughter disclose this abuse? And she said yes, and that was an incorrect translation. He would have been standing up and saying, no, that's totally wrong. So bottom line is, from your perspective, because Mr. Nagash was there, he did speak both languages. If there was a problem through his lawyer, he immediately interjected and questioned. Is that correct? It seems to be the case, you know. And the other issue is that — so then when he — when Mr. Nagash later testifies about — on the interpreter issue, the one — to, you know, to respond to my opponent's point about that was just one example of the potential difficulties involved, A, that was, you know, he needs to — it's his burden in this case to establish that there was a problem. So if that's the only example he has, then that's what this Court has to look at. But there was actually a discussion after that where a defense counsel says, well, yesterday he also talked about the — there being inaccuracies in the translation of the mother's testimony about the statements that the mother had made to police. And on cross-examination of Mr. Nagash about that issue, the prosecutor kind of goes through and said, well, here's the police report. This is what I asked her. She said that she told the police this or she didn't tell the police that, and that's all accurate. And he confirms, yeah, that's what she said. So even, you know, I think given the nature of the record in this case, there's a sense that what Mr. Nagash was able to point out as problems with the interpretation are really all that's there. And at the end of the day, an interpreter paraphrasing testimony without changing the essential meaning does not rise to the level of a confrontation violation, and certainly the State trial court in this case did not unreasonably apply any Federal law in reaching that conclusion. Unless the court has any further questions. Questions by my colleagues? I ask the court to affirm the district court's judgment. Thank you. Thank you. Now, you don't have any rebuttal time left, but you've done a fine job, so we appreciate your argument. The case just argued is submitted.
judges: M. Smith, Murguia, Korman